**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DANIEL J. McGLYNN** | **CIVIL ACTION** |
| **VERSUS** | |
| **RALPH D. HUSTON** | **NO. 09-829-D-M2** |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within fourteen (14) days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, January 27, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANIEL J. McGLYNN                                                                         CIVIL ACTION

VERSUS

RALPH D. HUSTON                                                                           NO. 09-829-D-M2

## MAGISTRATE JUDGE'S SUPPLEMENTAL REPORT

This matter is before the Court on the Motion for Remand (R. Doc. 6) filed by plaintiff, Daniel J. McGlynn ("McGlynn"). The undersigned initially issued a Report & Recommendation (R. Doc. 10) concerning McGlynn's remand motion on November 6, 2009. Subsequent to the issuance of that report, defendant, Ralph D. Huston ("Huston"), filed objections and additional evidence under seal relating to the remand motion. The District Judge therefore referred the matter back to the undersigned (R. Doc. 15) for consideration of such additional evidence and objections and for the issuance of a supplemental report. McGlynn filed a response (R. Doc. 16) to Huston's objections on December 9, 2009, in response to which Huston filed a reply memorandum (R. Doc. 19).

## FACTS & PROCEDURAL BACKGROUND

McGlynn filed this suit, alleging breach of contract, breach of ethical and/or fiduciary duty, conversion, and/or failure to pay an open account, in the 19th Judicial District Court, Parish of East Baton Rouge, on September 2, 2009. In the petition, he avers that he is an attorney practicing law in Baton Rouge, Louisiana, and that, on April 11, 2008, he was contacted by telephone by Huston, an attorney from Houston, Texas, who was then unknown to McGlynn. Huston allegedly solicited McGlynn's assistance in prosecuting a civil case in Dallas, Texas, captioned *James E. Willett, et al v. Teva Pharmaceuticals, et*

1

*al*, Case No. 3:06-cv-01579N, in which Huston was serving as plaintiffs' counsel. McGlynn enrolled as an additional attorney of record for the plaintiffs. A trial was scheduled in the case for September 29, 2008. McGlynn alleges that Huston solicited his financial support in retaining and paying liability experts for the trial and suggested they split the attorney's fees 50%/50%.

McGlynn contends that he and Huston agreed to the 50%/50% fee split arrangement and that he immediately began to bear the costs of certain experts and to provide his insight and financial backing to the suit. Thereafter, McGlynn (and his associate, Ann Trantham) and Huston together worked the case through discovery and prepared it for trial.

According to McGlynn, upon information and belief, the case was settled by Huston on October 7, 2008, for an undisclosed amount and without the involvement of or any communication to McGlynn, who remained unaware of the settlement. McGlynn contends that, in various telephone calls and emails over the next few months, he inquired about the status of settlement, and in all of those communications, Huston "responded deceptively" and did not inform McGlynn that the case had been settled until April 14, 2009.[1]

According to the petition, when McGlynn learned of the settlement and disbursement of settlement funds, he immediately made amicable demand upon Huston and provided him with an itemization of his expenses relative to the case, which amounted to $17,300.11. *See*, Petition, R. Doc. 1-2, ¶19. McGlynn contends that Huston reimbursed him in the

---

[1] According to the petition, upon information and belief, Huston received the settlement funds on or about December 15, 2008, and he received a 40% fee. *See*, Petition, ¶14.

amount of $10,506.47.  *Id.*  Thus, there is a remaining balance of $6,793.64 of unpaid expenses purportedly owed to McGlynn.  *Id.*  Additionally, McGlynn asserts that Huston has not paid him any of the attorney's fees owed under the agreement between them.  *Id.,* ¶20.  Since the amount of the settlement is confidential, McGlynn contends, in the petition, that the amount of attorney's fees that Huston owes him is undetermined.  However, McGlynn specifically alleges in the petition that "the total amount [of] damages he has suffered as a result of Huston's actions, including all attorney's fees and costs prayed for, does not exceed the amount of seventy-five thousand dollars ($74,999.00)."
*Id.*, ¶22.  In his prayer for relief in the petition, McGlynn seeks payment of his alleged 50% share of the attorney's fees received in connection with the underlying litigation, payment of the balance of $6,793.64 of unpaid expenses, and an award of the reasonable attorney's fees and costs in bringing this present action "cumulatively not exceeding $74,999.00."

On October 2, 2009, Huston removed McGlynn's suit to this Court on the basis of diversity jurisdiction.  On October 14, 2009, McGlynn filed an affidavit with this Court, wherein he attests to the fact that "[t]he total sum or value in controversy in this cause of action, including attorney's fees[,] which may be awarded does not exceed seventy-five thousand dollars ($75,000.00)."  *See*, R. Doc. 5.  The affidavit also indicates that the petition contained a stipulation that the total amount of damages suffered in this matter, including attorney's fees, does not exceed $75,000.00.  *Id.*  Finally, the affidavit indicates that the total amount of damages being sought is $75,000.00 and that neither McGlynn, nor his attorney, will accept compensation in this matter that exceeds that amount.  *Id.*

McGlynn filed a motion to remand on October 14, 2009, seeking to have this case remanded to state court on the ground that the requisite amount in controversy does not

exist for purposes of diversity jurisdiction.  As mentioned above, the undersigned previously issued a Report & Recommendation concerning that motion, recommending remand, based upon the fact that Huston had not presented sufficient evidence demonstrating that the amount of unpaid expenses still outstanding, in addition to the amount of attorney's fees McGlynn is allegedly owed under the 50%/50% agreement between counsel concerning the underlying litigation, along with any attorney's fees claimed in relation to this litigation, exceed $75,000.00.  On November 23, 2009, Huston filed objections to the November 6, 2009 Report & Recommendation as well as a motion for leave to file, under seal, additional evidence concerning the amount in controversy.  On November 24, 2009, the Court granted Huston's motion to file that additional evidence under seal.  The undersigned now considers that additional evidence and Huston's objections in connection with McGlynn's motion to remand.[2]

## LAW & ANALYSIS

Under 28 U.S.C. § 1332(a), a federal court has diversity jurisdiction if the matter in controversy:  (1) exceeds $75,000.00, exclusive of interest and costs, and (2) is between citizens of different states.[3]  Because plaintiffs in Louisiana state courts, by law, may not

---

[2] Although McGlynn contends, in his response to Huston's objections, that such objections should not be considered by the Court because they were untimely filed, the Court disagrees.  Under the time computation rules of Fed. R. Civ. P. 6 in effect prior to December 1, 2009, legal holidays and weekends were not to be included in a time calculation of less than eleven (11) days.  Pursuant to 28 U.S.C. §635(b)(1), Huston had ten (10) days within which to file objections to the undersigned's November 6, 2009 report.  Since the intervening weekends and the Veteran's Day holiday were excluded from the ten (10) day period for responding, Huston's opposition was due on November 23, 2009 and was timely filed on that date.

[3] It is undisputed that the parties in this matter are citizens of different states; thus, the only issue herein is whether the requisite amount is in controversy for

specify the numerical value of claimed damages, the removing defendant has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000.00. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000). A defendant makes that showing when it is "facially apparent" from a reading of the complaint that the plaintiff's claims are likely to exceed $75.000.00. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

If it is not "facially apparent," the court may rely on "summary judgment-type" evidence relevant to the amount in controversy at the time of removal to make the determination. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999); *White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003). All doubts and uncertainties regarding federal jurisdiction must be resolved in favor of remand. *Sutherland v. First Nationwide Mortgage Corp.*, 2000 WL 1060362 (N.D. Tex 2000). Under any manner of proof, jurisdictional facts which support removal must be judged at the time of removal, and post-petition affidavits are allowable only if relevant to that period of time. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995).

If a removing defendant shows that the amount in controversy is likely to exceed the federal jurisdictional minimum, the burden then shifts to the plaintiff to show that it is a "legal certainty" that he or she will not be able to recover the jurisdictional amount – a burden which can be met by: (1) showing state procedural rules binding the plaintiff to his/her pleadings;[4] or (2) filing a binding stipulation or affidavit to that effect with the

---

purposes of diversity jurisdiction.

[4] For example, the plaintiffs' state court petition might cite a state law that prohibits recovery of damages that exceed those requested in the *ad damnum* clause

complaint.  *De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995).

As discussed in the undersigned's prior Report & Recommendation, it is ambiguous as to whether the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs, when only the face of the state court petition is examined.  Although it appears from the face of the petition that $6,793.64 in unpaid case related costs are at issue (*See*, ¶19 of the Petition), the amount of attorney's fees that McGlynn is seeking under the alleged 50%/50% fee split agreement with Huston is not disclosed in the petition, and the Court therefore cannot calculate McGlynn's 50% share of the alleged 40% fee that Huston received from that settlement.

Moreover, although McGlynn "stipulated" within the petition that the "the total amount [of] damages he has suffered as a result of Huston's actions, including all attorney's fees and costs prayed for, does not exceed the amount of seventy-five thousand dollars ($74,999.00)," such "stipulation" does not constitute a binding limitation upon the amount he can receive in state court since a state court can award McGlynn all damages to which it finds he is entitled, regardless of what is claimed in the petition.[5]  The only way such a "stipulation" would bind McGlynn to less than $75,000.00 is if, within that stipulation, McGlynn expressly renounced his right to recover in excess of $75,000.00 in the event he was awarded above that amount in state court.  Put another way, because McGlynn's "stipulation" in his state court petition fails to provide that he will not accept more than

---

and that prohibits the initial *ad damnum* clause from being increased by amendment.

[5] Pursuant to La.C.C.P. art. 862, a final judgment in state court "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general or equitable relief."  La. C.C.P. art. 862.

6

$74,999.00 in the event he is awarded that amount in state court, it is not binding upon him and therefore does nothing to suggest the amount in controversy in this matter.[6] [7]

---

[6] Although the undersigned noted in the prior Report & Recommendation that McGlynn's "stipulation" in his petition is not binding upon him because it was not verified by McGlynn himself (*i.e.*, McGlynn did not sign the petition along with his counsel, Terrence Donahue, Jr.), relying upon *Smith v. Pfizer, Inc.*, 2005 WL 3618319 (S.D.Ill. 2005), the undersigned finds, upon further consideration, that such lack of verification might not serve as a reason, on its own, for finding the stipulation non-binding. *See, Smith v. Pfizer, Inc.*, 2005 WL 3618319 (S.D.Ill. 2005)(finding that a "stipulation" in the complaint that the plaintiff would not seek or accept over $75,000.00 was insufficient to block removal since the plaintiff could amend her complaint at any time and delete that language, and since the separate affidavit tendered by the plaintiff's lawyer was not signed by the plaintiff herself).

The Eastern District of Louisiana has held that a stipulation contained in a petition indicating that the damages sustained do not exceed $75,000.00 and that renounces the plaintiff's right to recover in excess of that amount constitutes a "judicial confession" under La. Civ. Code art. 1853, which is binding upon the plaintiff, even if the petition is only signed by plaintiff's counsel. *See, Zeno v. Safeco General Ins. Co. of America*, 2008 WL 282946, at *3 (E.D.La. 2008); *Engstrom v. L-3 Communications Government Services, Inc.*, 2004 WL 2984329, at *4 (E.D.La. 2004). The Eastern District's decisions in that regard, however, are not entirely apposite with the present case since the "stipulation" contained in McGlynn's petition only provides that the damages suffered do not exceed $75,000, and it does not provide an affirmative renouncement of the right to recover in excess of $75,000 if the state court finds that he is entitled to that amount.

[7] In order for allegations within a state court petition to constitute a binding stipulation limiting damages below the federal jurisdictional minimum, warranting remand to state court, the plaintiff must do more than simply allege that the amount in controversy or the amount of damages suffered does not exceed $74,999.00. *See, Engstrom*, at *4 (E.D.La. 2004), citing *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) and *Turkish v. St. Paul Fire & Marine Insurance Co.*, 2003 WL 22434222 (E.D. La. 2003). The plaintiff must expressly deny that he/she will accept more than $75,000.00 if the state court awards in excess of that amount. *Id.* (plaintiffs' allegations in their state court petition were held to constitute a binding stipulation because they "affirmatively and knowingly waive[d] entitlement to any damages in excess of $74,999 . . . after having been advised that their waiver was binding and effective and that under no circumstances could a Louisiana state court award them more"); *Zeno*, at *3 (Plaintiff explicitly stated in the state court petition that the total value in controversy did not exceed $75,000, that neither she nor her counsel "will accept an amount that exceeds $75,000, exclusive of interests and costs," that her

Accordingly, it is not "facially apparent" from the petition whether or not the jurisdictional minimum is in controversy in this case.

Because the jurisdictional amount is not "facially apparent" from the petition, the undersigned must next consider whether the additional evidence that Huston filed under seal satisfies his burden of proving that the requisite amount is in controversy in this matter for purposes of diversity jurisdiction. The additional evidence Huston has submitted includes a second affidavit by him as well as a copy of an unredacted demand letter that McGlynn sent to Huston prior to filing suit, on May 7, 2009.[8]  Because of the sealed nature

---

recovery "is limited to [an] amount less than $75,000, exclusive of interest and costs," and that she would not amend her petition in the future to seek damages greater than $75,000. The Eastern District found that such allegations were binding and sufficient to prove, to a legal certainty, that the plaintiff would not recover in excess of the federal jurisdictional minimum because, through her allegations, the plaintiff had affirmatively renounced her right to recover in excess of $75,000. The Eastern District specifically noted that such case was not a situation where the plaintiff had only stated in the petition that her damages did not exceed $75,000, without stating whether she would accept more than $75,000 in the event the state court was to award that amount); *In re 1994 Exxon Chemical Fire*, 558 F.3d 378 (5th Cir. 2009)(Distinguishing *Engstrom* on the ground that the plaintiffs in *Exxon* "merely alleged that the amount in controversy did not exceed the jurisdictional amount; they did not deny that they would *accept* more than $50,000." Because plaintiffs are not limited to recovery of the damages requested in their pleadings, under La. C.C.P. art. 862, a plaintiff must affirmatively waive the right to accept a judgment in excess of the jurisdictional amount in order for his pre-removal state court stipulations to bind him).

[8] Although the Fifth Circuit Court of Appeals has definitively held that a settlement demand letter may be considered an "other paper" which commences the running of the period for filing a notice of removal under 28 U.S.C. §1446(b), it has not conclusively addressed the issue of whether a pre-petition settlement demand letter can be considered as relevant evidence of the amount in controversy. However, it can be inferred from several Fifth Circuit cases that such a practice is permissible when the settlement offer reflects an honest assessment of the value of the plaintiff's claims. *See, Pollet v. Sears Roebuck and Co.*, 2002 WL 1939917 (5th Cir. 2002); *Hartford Insurance Group v. Lou-Con Inc.*, 293 F.3d 908 (5th Cir. 2002); *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994).

of the additional evidence submitted by Huston, the undersigned will not discuss that evidence in detail herein. It appears that both parties have conceded that, even when the confidential settlement amount is considered and, thus, the amount of attorney's fees to which McGlynn claims he is entitled under the 50%/50% agreement, the amount of damages being claimed herein is between $66,793.64 and $72,397.64, exclusive of the attorney's fees that will be incurred by McGlynn in connection with this case. Huston, however, contends that the amount of attorney's fees that will be incurred by McGlynn in this litigation will raise the amount in controversy above $75,000.00.

As evidence of the amount of attorney's fees in this case, Huston has attested in his

---

Furthermore, both this Court and the Eastern District of Louisiana have previously considered settlement demands as "valuable evidence" in determining the amount in controversy, as have numerous courts in other jurisdictions. *See, Fairchild v. State Farm Mutual Automobile Ins. Co.*, 907 F.Supp. 969, 971 (M.D. La. 1995)(citing *Wilson v. Belin*, 20 F.3d 644, 651 n. 8 (5th Cir. 1994))(holding that the amount of a settlement offer "is valuable evidence to indicate the amount in controversy at the time of removal"); *Lonon v. Prieto*, 2000WL 913808 (E.D. La. 2000); *Hammel v. State Farm Fire and Cas. Co.*, 2007 WL 519280 (E.D.La. 2007)(finding that case distinguishable from *Pollet* and holding that the plaintiffs' pre-removal settlement demand was relevant to determine the damages claimed at the time of removal). Specifically, courts in other circuits have held that, while a settlement offer itself "may not be determinative" it may "count [ ] for something" and may be considered relevant if it appears "to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *Arellano v. Home Depot U.S.A., Inc.*, 245 F.Supp.2d 1102 (S.D. Ca. 2003); *Krajca v. Southland Corp.*, 206 F.Supp.2d 1079 (D. Nev. 2002); *Del Real v. Healthsouth Corp.*, 171 F.Supp.2d 1041, 1043 (D.Ariz. 2001); *Baxter v. National Safety Council*, 2005 Wl 2219369 (W.D. Wash. 2005); *Vermande v. Hyundai Motor America, Inc.*, 351 F.Supp.2d 195 (D. Conn. 2004); *Lapree v. Prudential Financial*, 385 F.Supp.2d 839 (S.D. Iowa 2005); *Ciancaglione v. Sutherlin*, 2004 WL 2040342 (E.D. Pa.2004). Several courts have even found that a settlement demand alone is sufficient to support removal jurisdiction where the plaintiff does not argue in opposition to removal that his settlement demand was inflated or was not an honest assessment of his damages. *Baxter*, at *2; *Cohn*, at 840; *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

9

affidavit that,[9] based upon his legal experience, it is his opinion that potential attorney's fees in this matter will, more likely than not, place the amount in controversy well above $75,000.00 because this case "involves issues that will be vigorously contested and include, from [his] point of view, the existence of a contract, misrepresentations by Plaintiff [ ], the unilateral changing of offers of agreement, and performance." *See*, Huston's sealed affidavit, R. Doc. 14. Such conclusory assertions in an affidavit as to the amount of attorney's fees that may be incurred in litigation, however, have not been recognized by courts as sufficient evidence as to the amount in controversy.[10] In order to sufficiently

---

[9] Huston's affidavit and the demand letter were filed under seal so as to maintain the confidentiality of the settlement amount in the underlying litigation. Since Huston's statement pertaining to attorney's fees does not compromise the confidentiality of the settlement amount, the Court mentions it herein.

[10] *See, Ferguson v. First American Specialty Insurance Company*, 2009 WL 4154653 (D.Ariz. 2009)(Defendant submitted an affidavit by the defense attorney attesting to the amount of attorney's fees likely to be incurred in the case, and the court found such affidavit, along with other evidence, insufficient to prove that the amount in controversy exceeded $75,000.00. The court explained that, while the attorney's fees recoverable under law may be included in computing the amount in controversy when an underlying statute authorizes such fees, the defense attorney's estimation in his affidavit of the attorney's fees that would be incurred was "too speculative" to suffice for purposes of calculating the $75,000.00 threshold, noting that, in his affidavit, defense counsel had failed to cite a single case in support of what attorney's fees were likely to be in a case that had similar facts and allegations to the case at bar. Further, while the defense attorney's affidavit in that case discussed the potential work that attorneys might perform in that case, the estimated hourly billing rate, and the number of hours required to achieve that work, his estimations in that respect were "too speculative" because he had not cited any supporting cases); *Hall v. American Security Insurance Company*, 2009 WL 2215131 (S.D.Fla. 2009)(holding that the defendant had not met its burden of showing that a reasonable amount of attorney's fees in the case would exceed $14,233.72, noting that "relying on general statements that any litigation of this nature would result in that level of fees is insufficient to meet the burden of proof"); *Laporte v. Pope*, 2009 WL 1904327 (D.Colo. 2009)(noting that, in carrying its burden of proof upon removal, a defendant can tender an affidavit by its own experts as to the probable costs of litigation and amount of attorney's fees that could reasonably be expected to be awarded in a case of that type that is litigated to judgment).

demonstrate the amount of attorney's fees likely to be incurred in this matter, Huston should have cited cases with similar facts and allegations to the present matter indicating the amount of attorney's fees incurred in those cases; he should have discussed, in his affidavit, the potential work in which McGlynn's attorney might reasonably engage in this matter, McGlynn's counsel's estimated hourly billing rate, and the number of hours required to achieve that work; and/or he should have submitted an expert affidavit indicating the probable costs of this litigation and the amount of attorney's fees that could reasonably be expected to be awarded in a case of this type that is litigated to judgment. He did none of the above, and his self-serving statement in his affidavit as to the amount of attorney's fees that will be incurred in this matter is simply too speculative to satisfy his burden of proving that the attorney's fees McGlynn will incur in this matter will cause the amount in controversy to exceed the jurisdictional minimum.

Thus, since Huston has failed to carry his burden of proof upon removal and the amount in controversy remains ambiguous, the undersigned is permitted to consider McGlynn's post-removal affidavit clarifying the amount in controversy.[11] Because, in that

---

[11] *See, Guillory v. Chevron Stations, Inc.*, 2004 WL 1661201 (E.D. La. 2004)(Given that the amount in controversy was not facially apparent from the complaint and the defendant's inability to show by a preponderance of the evidence that more than $75,000 was in controversy, the court credited the plaintiff's post-removal affidavit); *Easley v. Pace Concerts*, 1999 WL 649632 (E.D. La. 1999)(similarly crediting a plaintiff's stipulation that damages did not meet the jurisdictional minimum for diversity); *Parker v. Millar Elevator Services Co.*, 2000 WL 64289 (E.D. La. 2000)(Although not binding, a post-removal unsworn stipulation may be considered as evidence in determining whether the amount in controversy has been met. After considering all the evidence, including the post-removal stipulation, the court found that the defendants had failed to prove by a preponderance of the evidence that the plaintiff's total damages more likely than not would exceed the jurisdictional amount); *De Aguilar v. Boeing Co. [De Aguilar II]*, 47 F.3d 1404, 1406 (5th Cir. 1995)("Post-removal affidavits sometimes can be relevant where the jurisdictional amount question

affidavit, McGlynn and his counsel waived any right to accept compensation in this matter exceeding $75,000.00, exclusive of interest and costs, remand of this case to state court is appropriate.

### **RECOMMENDATION**

For the above reasons, it is recommended that the Motion for Remand (R. Doc. 6) filed by plaintiff, Daniel J. McGlynn, should be **GRANTED** and that this matter should be **REMANDED** to the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, January 27, 2010.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

is unresolved"); *Jackson v. Markel American Insurance Co.*, 1998 WL 527230 (N.D. Miss. 1998)(Where the court found it doubtful, based upon the face of the complaint and the evidence presented by the defendant, that the plaintiff would recover in excess of $75,000, the court found it appropriate to consider the plaintiff's affidavits and statement of intent to recover below the federal jurisdictional minimum).